IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:16CR119–HEH |
| | ) | |
| JOHNNY SHAW, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**
(Sustaining United States of America's Objection)

THIS MATTER came before the Court on February 24, 2017, for the sentencing of Defendant Johnny Shaw ("Defendant") after he plead guilty to one count of possession of a firearm by a drug user, in violation of 18 U.S.C. § 9229g)(3). At the sentencing hearing, the United States objected to the calculation of Defendant's sentencing guidelines as stated in the Presentence Investigation Report ("PSR"), specifically the total offense level. The Government argued that Defendant should receive a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for transferring a firearm with reason to believe that it would be possessed in connection with another felony. For the reasons announced from the bench during the sentencing hearing and further amplified herein, the Court finds the four-level enhancement applicable, sustains the objection, and finds that Defendant's total offense level is 17.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

The only evidence put on at the sentencing hearing was testimony by Special Agent Joe Norman from the Bureau of Alcohol, Tobacco, Firearms, and Explosives

1

("ATF") as well as a summary report of an interview he conducted with Defendant on June 17, 2016, admitted over Defendant's objection as Government's Exhibit 1. Special Agent Norman's report and testimony revealed the following pertinent facts.

On June 17, 2016, ATF Special Agents Joe Norman and Todd Fleming visited Defendant at his residence to discuss five firearm purchases Defendant made in 2015. (Govt. Ex. 1 ¶ 1; *see also id.* ¶ 3 (describing the ATF Forms Defendant filled out while purchasing the firearms as well as a general description of each firearm).) Upon learning of the reason for the Agents' visit, Defendant immediately stated that four of the five firearms had been stolen from a van parked in his driveway, but that the Chesterfield County Police Department had refused to file a report without the weapons' serial numbers. (*Id.* ¶¶ 1, 2.) Defendant stated that the firearms were all previously stored in his van, but that "six (6) months" prior he noticed the guns were missing. (*Id.* ¶ 3.) Special Agent Norman then informed Defendant that he wanted to review some paperwork relating to Defendant's firearm purchases, and Defendant invited both Agents inside his house. (*Id.* ¶ 2.)

The Agents were primarily concerned with the location of a Taurus PT24/7G2 firearm with serial number TIS72351 ("Taurus"), which Defendant purchased on August 5, 2015. (*Id.* ¶¶ 3, 5.) Special Agent Norman told Defendant that the Taurus had been used in several shootings and that if the firearms were stolen, as Defendant had previously stated, then that meant that Defendant "was responsible for all the shootings that occurred. " (*Id.* ¶ 5.)

Defendant quickly changed his story and "stated that he ha[d] been smoking

2

marijuana at least four (4) to five (5) times a day, every day for the last [fifteen] years, and *ha[d] been purchasing* marijuana from an unknown" dealer in Petersburg, Virginia. (*Id.* ¶ 6 (emphasis added).) Defendant stated that he purchased the Taurus for this marijuana dealer, but that he did not know the dealer's name. (*Id.*) "During questioning, Special Agent Norman was flipping through some paperwork in his folder and a picture of ["W"] was in the paperwork and became visible to [Defendant]. Before Special Agent Norman could show [Defendant] the picture of ["W"], [Defendant] stated 'that's the guy right there, he is the one that has the gun'. [Defendant] stated that he did not know ["W's"] name, but stated that ["W"] was the guy he gave the gun to." (*Id.* ¶ 8.)

Defendant then described in detail the events leading up to and surrounding his straw purchase of the Taurus for "W." Defendant stated that "*he would purchase marijuana from* ["W"] *on the street in the area near a Deli, close to Washington Street and Dunlop Street in Petersburg.*" (*Id.* ¶ 6 (emphasis added).) During one of an ongoing series of these drug purchases, "W" noticed that Defendant "*always* open carried a gun, and asked [Defendant] if he was worried about Law Enforcement taking his gun and getting in trouble." (*Id.* (emphasis added).) Defendant told "W" that he was allowed to buy and carry a gun lawfully. (*Id.*) "W" then asked Defendant to purchase a firearm for him in exchange for free marijuana. (*Id.*)

Defendant agreed and drove "W" to Liberty Firearms in Hopewell, Virginia, where "W" picked out the Taurus as the gun that he wanted Defendant to purchase. (*Id.* ¶ 7.) After selecting the firearm that he wanted, "W" gave Defendant $400.00 to pay for the Taurus and ammunition. (*Id.*) Defendant then drove "W" back to Petersburg, where

3

"W" gave defendant "a handful of marijuana" for purchasing the Taurus. (*Id.*) When the Special Agents asked Defendant why "W" needed Defendant to purchase a gun for him, Defendant stated that he did not know and that he just assumed "W" "was a convicted felon and could not get one for himself." (*Id.* ¶ 9.) Before concluding their visit, the Special Agents seized from Defendant's home a Hi-Point, JCP 40 caliber pistol, bearing serial number X7232072, and a bag of marijuana. (*Id.* ¶ 12.)

On September 20, 2016, the Grand Jury returned a seven-count Indictment, charging the Defendant with possession of firearms and ammunition by a drug user, illegal transfer of a firearm, and possession of marijuana. (ECF No. 1.) Defendant subsequently pleaded guilty to one count of possession of a firearm and ammunition by a drug user in violation of 18 U.S.C. § 922(g)(3) on November 17, 2016. (ECF No. 13.) The Government dismissed the remaining six counts.

Following the Court's acceptance of Defendant's guilty plea, the case was referred to the United States Probation Office for the preparation of a PSR. The PSR calculated Defendant's total offense level at 13 with a criminal history category of I. (ECF No. 17.) At the sentencing hearing, the Government objected to the PSR and sought the application of a four-level enhancement pursuant to U.S.S.G. § 2K2.1(B) (1)(b). (ECF No. 19.) After hearing evidence and argument, the Court sustained the objection. This opinion followed.

II. **LEGAL STANDARD**

The Court should apply a four-level enhancement to a base offense calculation if it finds that a defendant transferred a firearm "with knowledge, intent, or reason to believe

4

that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). "The government bears the burden of proving the facts necessary to establish the applicability of [the § 2K2.1(b)(6)(B)] enhancement by the preponderance of the evidence . . . ." *United States v. Garnett*, 243 F.3d 824, 828 (4th Cir. 2001); *see also United States v. Steffen*, 741 F.3d 411, 414 (4th Cir. 2013) ("The burden is on the government to prove by a preponderance of the evidence that the sentencing enhancement should be applied."). In the immediate case, it is undisputed that Defendant "transferred" a gun to "W." Thus, the Government must prove by a preponderance of the evidence that the transfer occurred with Defendant's "knowledge, intent, or reason to believe that [the firearm] would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B).

"Another felony offense" is defined by the Sentencing Guidelines as "any Federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1, cmt. n. 14(C). Section 2K2.1(b)(6)(B) "does not require a defendant's knowledge of a specific offense to be committed." *United States v. Cutler*, 36 F.3d 406, 408 (4th Cir. 1994).[1] When, as here, the defendant has personal contact with the gun's recipient, "it is 'logical for the sentencing courts to infer a certain level of knowledge about [the recipient's] intended uses.'" *United States v. Drake*, 310 Fed. App'x 592, 593 (4th Cir. 2009) (unpublished opinion) (quoting *United States v. Askew*, 193 F.3d 1181,

---

[1] Prior to 2011, U.S.S.G. § 2K2.1(b)(6)(B) was codified at subsection (b)(5). *See* Sentencing Guidelines for United States Courts, 76 Fed. Reg. 24960, 24966–67 (May 3, 2011).

1184–85 (11th Cir. 1999)).

## III. ANALYSIS

The Government argues that a felony-offense, four-level enhancement requirement is satisfied in this case because Defendant knew "W" was a marijuana dealer, a felony under 21 U.S.C. § 841, and therefore had reason to believe that "W" would possess the Taurus in connection with another felony offense. (Govt. Position on Sentencing Factors 8–11, ECF No. 19.) Section 841(b) renders the sale of "less than 50 kilograms of marijuana" punishable by "a term of imprisonment of not more than 5 years." 21 U.S.C. § 841(b)(1)(D). Each instance of drug distribution or possession with the intent to distribute marijuana constitutes a felony, irrespective of the amount of marijuana involved.[2] *See* 21 U.S.C. § 841(a)(1).

The Court finds that the four-level enhancement applies in this case because Defendant transferred a firearm to "W" with reason to believe that "W" would possess the firearm in connection with further sales of marijuana, a violation of 21 U.S.C. § 841(b)(1)(D). The Court finds that Defendant purchased marijuana multiple times from "W" at the same location on the streets of Petersburg. Defendant's only interactions with "W" occurred during his habitual purchases of drugs from "W," and there is no indication that Defendant knew "W" in any context other than drug deals. In fact, Defendant did not even know "W's" name until he identified "W" as the gun's recipient in a

---

[2] But see 21 U.S.C. § 841(b)(1)(E)(4), which provides, "Notwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as" a misdemeanor. There is no such evidence in this case.

photograph. It is within this context that Defendant agreed to purchase the Taurus for "W" in exchange for free marijuana.

"When the seller [of a firearm] has personal contact with the buyer, it is logical for the sentencing courts to infer a certain level of knowledge about [its] buyers' intended uses." *Drake*, 310 Fed. App'x at 593 (citation and internal quotation marks omitted); *cf. Whitaker*, 633 Fed. App'x at 105 (holding that a court may "infer[] from the totality of the circumstances that [a defendant] had reason to believe that the purchaser's intentions with the firearms were not lawful") (citing *United States v. Garcia*, 635 F.3d 472, 478 (10th Cir. 2011) (providing that courts may rely on common-sense inferences drawn from circumstantial evidence when determining applicability of a sentencing enhancement)).

In addition, the transferred gun must be used or possessed "in connection with" the predicate felony in order to trigger a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B). "[A] firearm is 'used in connection with' another felony offense if it facilitates or has a tendency to facilitate the felony offense." *Garnett*, 243 F.3d at 829 (citing *Smith v. United States*, 508 U.S. 223, 237 (1993)). "On one hand, the presence of the firearm cannot be 'the result of accident or coincidence.'" *United States v. Lipford*, 203 F.3d 259, 266 (4th Cir. 2000) (analyzing "in relation to" element in 18 U.S.C. § 924(c) conviction) (citing *United States v. Mitchell*, 104 F.3d 649, 654 (4th Cir.1997)). "On the other hand, it is enough . . . if the firearm was present for protection or to embolden the actor." *Id.*

In the context of illegal drug sales, it is sufficient that the defendant had reason to know that the firearm "would be used to facilitate or embolden [the drug dealer] in his

7

sale of illegal drugs." *Drake*, 310 Fed. App'x at 593 (4th Cir. 2009) (further noting that "the Government can meet its burden [of proving that an enhancement is appropriate under § 2K2.1 (b)(6)(B)] by showing that the gun was present for protection or to embolden the actor") (citing *Lipford*, 203 F.3d at 266); *see also United States v. Pineda*, 770 F.3d 313, 317 (4th Cir. 2014) (holding that a firearm possessed for precaution is possessed "in furtherance" of a drug transaction).

The Court finds that the firearm trade at issue, initiated during a recurring course of drug dealing and in exchange for marijuana, gave Defendant reason to believe that "W" would possess the firearm in association with his drug trafficking activities. It is conceivable that "W" may have used the Taurus for purposes other than in the context of dealing marijuana. However, the fact that Defendant knew "W" *solely* as his drug supplier and knew nothing else about him—including his name—is sufficient for the Court to find by a preponderance of the evidence that Defendant had reason to believe that "W" would use the Taurus either to embolden himself, for protection, or to facilitate future drug trafficking.

Moreover, the Court of Appeals for the Fourth Circuit has squarely addressed the applicability of § 2K2.1(b)(6)(B) in cases where, as here, a defendant transfers a gun to a known drug dealer. When the evidence establishes that a defendant "had reason to believe that [a firearm was] being distributed to drug abusers and drug dealers[, it] leaves no doubt that [the defendant] knew that the guns were being used in connection with another felony offense." *Cutler*, 36 F.3d 406 at 407; *see also Whitaker*, 633 Fed. App'x at 105 (upholding enhancement where "[t]he preponderance of the evidence establishes

8

that [the defendant] had reason to believe that the purchasers were drug dealers"). Having found that Defendant knew "W" solely in his capacity as a drug dealer, the Court finds the enhancement equally applicable here.

During the sentencing hearing, Defendant contended that the Government failed to establish the felony-offense requirement. Defendant relied in part on the Fourth Circuit's opinion in *United States v. Garnett*, arguing that the enhancement is inapplicable in the absence of evidence of drug quantity. While the Government presented no evidence regarding the volume or quantity of "W's" marijuana sales, the Court finds that Defendant's reliance on *Garnett* is misplaced.

In *Garnett*, the defendant stole a machine gun valued at $1300 and contacted a third party to sell the weapon in exchange for cocaine base. 243 F.3d at 827. The third party made the exchange and returned to the defendant with $20 worth of cocaine base and without the machine gun. *Id.* The district court applied a four-level enhancement during sentencing after finding that the defendant used a firearm in connection with a drug trafficking offense by trading a firearm for an unspecified amount of cocaine base. 243 F.3d at 831. Garnett appealed his sentence, arguing that the enhancement was inapplicable because the government failed to prove that he possessed five or more grams of cocaine base, the threshold amount required to satisfy the "drug trafficking crime" requirement under 28 U.S.C. § 924(c). *Id.*

Reversing the district court's decision, the Fourth Circuit Court of Appeals found the enhancement inapplicable because evidence establishing the "amount of cocaine base

9

is necessary to the very existence of a[] [drug trafficking] offense under 18 U.S.C. § 924(c)." *Id.*

However, unlike *Garnett*, the Government's argument in this case is based on a crime of distribution under 21 U.S.C. § 841(b)(1)(D), rather than a crime of possession. Thus, the holding in *Garnett* has no bearing on the facts of this case. As the *Garnett* Court found, the amount of cocaine base is necessary only where "the individual charged is implicated in the *possession*, rather than the distribution, side of the drug trafficking transaction." *Id.* (emphasis in original). Therefore, because the Fourth Circuit has held that § 841(b)(1)(D) applies to the sale of marijuana "where the quantity of the drug is undetermined," *United States v. Hamlin*, 319 F.3d 666, 670 (4th Cir. 2003), the Court finds that the Government has met the felony-offense requirement, even in the absence of evidence regarding "W's" volume or quantity of marijuana sales.

## IV. CONCLUSION

Therefore, for the reasons stated from the bench during the sentencing hearing and further explained above, the Court finds by a preponderance of the evidence that Defendant knew "W" was a drug dealer and therefore Defendant had reason to believe "W" would possess the Taurus in connection with future drug trafficking activity. Consequently, the Court sustains the United States' objection to the PSR and finds that the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) is appropriate and amends Defendant's total offense level accordingly.

The Clerk is DIRECTED to send a copy of this Opinion to all counsel of record.

                                                                               /s/
                                                  Henry E. Hudson
                                                  United States District Judge

Date: March 6, 2017
Richmond, VA